Civil action, heard on case agreed.
From the facts presented it appears that the Atlantic and North Carolina Railroad is a corporation owning a railroad franchise and property, etc., which extends through the city of Kinston, and the codefendant is in possession of and operating the same under a lease of 91 years and 4 months from and after 1 September, 1904, same having been made by the Atlantic and North Carolina Railroad to one Howland and acquired and held by the Norfolk Southern Railroad. That several of the streets of plaintiff cross the road and tracks of these companies at right angles and somewhat less, and that the said city, claiming to act under proper statutory authority, had entered in an extensive improvement of said streets, paving, etc., and have assessed a proportionate part of the cost against the defendants as abutting owners, and the action is to collect said amount from said companies by foreclosure of the alleged lien on the franchise and property of the companies and a judicial sale of same. There was denial of liability by both defendants, and a question presented, also, of primary and secondary liability of the two companies in case collection of said assessment should be successfully enforced.
Upon the case submitted, the court entered the following (17) judgment:
This case coming on to be heard upon the facts agreed and contentions of the parties signed by counsel and filed with the record, upon consideration of said facts agreed and the contention of the parties, and after hearing argument of counsel it is now considered, ordered, and adjudged that the said assessments, and each of them, which were levied under ch. 202, Private Laws of 1913, were duly and legally levied and constitute a lien upon the property of the defendants as is contemplated in and by ch. 202 of the Private Laws of 1913, but that such lien is subject to the right, privilege, and easement of the defendants and their successors as common carriers to continue to use the said property for rights-of-way purposes, and for all other rights and purposes requisite and needful to the defendants and each of them in the performance of their duties as common carriers, embracing within *Page 19 
this exemption from lien the depots, freight and passenger, of the defendants, and all equipment and property of every kind incident to and necessary to the performance of their duties and carrying on of the business of common carrier.
It is further ordered, considered, and adjudged that the assessments and each of them which were levied under ch. 56 of the Public Laws of 1915 were duly and legally levied, and constitute a lien upon the property of the defendants as is contemplated in and by ch. 56 of the Public Laws of 1915, but that such lien is subject to the right, privilege, and easement of the defendants and their successors as common carriers to continue to use the said property for rights-of-way purposes, and for all other rights and purposes requisite and needful to the defendants and each of them in the performance of their duties as common carriers, embracing within this exemption from lien the depots, freight and passenger, of the defendants, and all equipment and property of every kind incident to and necessary to the performance of their duties and carrying on of the business of common carriers: Provided, that the triangular lot of land lying between the right of way of the defendant Atlantic and North Carolina Railroad Company and the Atlantic Coast Line Railroad Company and on the south side of Caswell Street, with a frontage of 321.9 feet, shall not be subject to the exemption from lien as hereinbefore provided.
It is further ordered and adjudged that the costs of the proceeding be paid by the defendants.
Both plaintiff and defendants appealed, assigning errors.
DEFENDANTS' APPEAL
As the court understands, it is not contended by (18) appellant that the assessments in this instance are irregular as a matter of form, nor that the amount is excessive, but defendants object to the validity of the claim on the ground of lack of power in the city, statutory or otherwise, to make any assessments of this kind against defendant companies. First, because railroad companies do not come within the principle permitting assessments for local improvements against abutting owners. There is strong diversity of opinion on this question, but the decisions in this State, and they are in *Page 20 
accord, we think, with the better considered cases elsewhere on the subject, are in favor of upholding such assessments in proper instances, and where proper legislative authority therefor is shown.Durham v. Public Service Co., 182 N.C. 333; New Bern v. R. R., 159 N.C. 542;Comrs. v. R. R., 133 N.C. 216; Cicero v. City of Chicago, 176 Ill. 501;Northern Pacific Ry. Co. v. Seattle, 46 Wn. 647; Sheley v. Detroit,45 Mich. 431; L N. R. R. Co. v. Barber Asphalt Co., 197 U.S. 430;Northern Indiana R. R. Co. v. Connely, 10 Ohio St. 159, and these and other decisions on the subject here and elsewhere are to the effect, further, both as to railroads and other abutting owners, that the legislative declaration on the subject is conclusive as to necessity and benefit of the proposed improvements, and in applying the principle and estimating the amount as against the owners, individual or corporate, the court may interfere only in case of palpable and gross abuse.Felmet v. Canton, 177 N.C. 52; Justice v. Asheville, 161 N.C. 62;Tarboro v. Staton, 156 N.C. 504-509; Milwaukee, etc., Ry. v. Wisconsin,252 U.S. 100; French v. Barber Asphalt Co., 161 U.S. 324. And in the present case, as stated, there is no claim of abuse or oppression as to the amount assessed against the defendants or their property. Defendants except further that there is an entire lack of statutory authority for making the assessments which the action seeks to enforce. The facts show that a part of the assessments against defendants were for improvements made under a statute applicable to the city of Kinston, Private Laws 1913, ch. 202. In that statute the city was authorized, on approval by popular vote provided for in the act, to issue coupon bonds to the amount of $100,000 in order to provide funds to pave generally and to improve the streets, to enlarge and extend its water-works and sewerage system, to enlarge and better equip its electric light plant, install a fire-alarm, etc. The act further authorizes the mayor or council to pave, macadamize streets, sidewalks, and assess the amount, not to exceed one-third cost, against abutting owners of real estate on either side of the street according to frontage, and that such assessment shall be a lien on said real estate payable in equal installments. It is (19) further provided that the right to pave and improve and assess abutting owners is extended to and includes all the streets of the city of Kinston, and the municipal government is further vested with all the powers conferred upon the city government by ch. 338, Private Laws 1905, in reference to assessing owners and collecting same. Referring to the act of 1905, so incorporated, we find in section 9 that the assessment is declared a lien on the property of abutting owners, payable in equal installments, that on failure to pay either, the entire amount shall become due and enforceable against the property on *Page 21 
which lien is declared by suit in Superior Court at the instance of the city. In reference to this matter, the case agreed states further that pursuant to this chapter an election was held, the bond issue authorized, the bonds sold, and the money expended on the designated subjects, and there not being sufficient amount to pay for the assessments made, the municipal authorities, without an election, made an additional issue of bonds for $50,000, which were sold and proceeds applied to payment of these improvements, for which a part of the present claim is made. It further appears that the Legislature, Private Laws 1915, ch. 319, passed an act validating any proceedings relative to issue and sale of the $100,000 bonds, which had been made and expended under the former statute. The claim for improvements under the statute, to our minds, is put beyond question by a further finding that defendant companies, by virtue of a deed from the original owner, have the title in fee for the land on which their railroad lies in the city of Kinston, and covering all the right of way except an inconsiderable portion of the amount, probably at one of the crossings, and this undoubtedly constituted defendants the owners for all purposes of all lands covered by the right of way, including that part of it abutting on either side of these intersecting streets.
In Northern Pacific Railroad v. Seattle, supra, it was held, among other things, "That abutting property cannot be released from the burdens of an assessment simply because the owner had seen fit to devote it to a use which may not be benefited by the local improvement." And in reference to the claims for improvements made and assessed under the general municipal act of 1915, appearing in C. S., ch. 56, art. 9, sec. 2703 et seq. This statute gives in explicit terms authority to municipal governments to assess abutting owners for street improvements, especially referring to railroads, providing that such claims shall constitute a lien on the property and franchise of the company, etc. The public acts contain, also, provisions as follows, C. S., 2704: "This article shall apply to all municipalities. It shall not, however, repeal any special or local law, or affect any proceedings under any special or local law for the making of street, sidewalk, or other improvements hereby authorized, or for the raising of funds therefor, (20) but shall be deemed to be additional and independent legislation for such purposes and to provide an alternative method of procedure for such purposes, and to be a complete act, not subject to any limitation or restriction contained in any other public or private law or laws, except as herein otherwise provided." There is no question presented in this suit as to the validity of the $100,000, or of the $50,000 additional bonds sold by the city authorities, or any other issue. The claim is for *Page 22 
assessments against abutting owners for their proportionate part of the amount for work that has been completed, and a perusal of the statutes show that ample legislative authority existed for such a procedure.
It is contended for the appellants that the public act affords no authority for the assessment because of the existence of the private act referred to, ch. 202, Private Laws of 1913, and we are cited toBramham v. Durham, 171 N.C. 196, as authority for this position. That was a case involving the validity of a bond issue, and it appeared that the public act passed in 1915 authorized a bond issue without the approval of a popular vote. At the same session, 1915, the Legislature passed a special act by which the city of Durham was authorized, if the measure was approved by popular vote, to make a bond issue of $300,000 to construct, pave, and improve the streets and sidewalks of the city of Durham. The city authorities undertook to issue bonds for the purpose indicated without approval of the voters as the private act required, and the proposed measure was enjoined. It will be noted that both acts were in force and effect, and it was clear that the bond issue permitted to Durham only after a vote was intended to provide for the entire work then contemplated, that it contained a clause repealing any and all laws inconsistent with its provisions, and the Court held that the private act, being still in force and requiring a popular vote, was inconsistent with the proposed issue without such vote and by correct construction it had the effect of exempting the city of Durham from the public statute, assuredly so while the private act was in force and intended to cover, for the present at least, the entire subject. But not so here, where the bonds authorized by the private statute had been voted on, the measure approved, and the bonds issued and sold. There was nothing, therefore, in the private act that interfered or was intended to interfere with the power to proceed under the public statute, and to give full force and effect to the clause in C. S., 2704, that the public act shall be deemed additional and independent legislation for the purpose indicated, and shall provide an alternative measure for such purposes, "etc., etc." The case presented is substantially similar to that of Fawcett v. Mt. Airy, 134 N.C. 125. There the commissioners, (21) who had made and expended a bond issue under a private law, were upheld in providing for additional funds under the general powers conferred upon them. See, also, the interpretation of this case appearing in Ellison v. Williamston, 152 N.C. 147, where the Court, in delivering the opinion, said: "In Fawcett's case, supra, the commissioners of Mount Airy had been empowered to submit to the voters a proposition to issue bonds to the amount of $50,000 for the purpose of `procuring for the town a system of water-works and installing an *Page 23 
electric plant to furnish the town with water and light.' The election was held, the measure approved, and the bonds issued and sold. It was subsequently disclosed that the bonds issued pursuant to this election were not sufficient for the purpose, and the commissioners, acting under the general authority vested in them by the law, issue bonds for the remainder of the cost.
"There, as stated, the measure had been approved, and bond issue for the amount had been issued and disposed of. The force and effect of the act was at an end, and the statute having fixed no limit on the amount, as inBurgin v. Smith, 151 N.C. 561, it was held that the question as to residue of the required expenditure was an open proposition to be dealt with by the municipality under its general power to provide for the necessary expenses of the town." It is fully understood, and has been repeatedly held, that the upkeep or repairs of streets, sidewalks, etc., is to be regarded as a necessary municipal expense, and requires no popular vote unless some law directly bearing on the subject may direct that such a vote be taken. SeeHargrave v. Comrs., 168 N.C. 626, and case cited, and the provisions of the private statute, ch. 202, Private Laws 1913, having been fully complied with, we see nothing in the facts as presented why the indebtedness incurred by the municipal authorities of Kinston does not constitute, in every way, a valid obligation of the city. The position is no way affected by the Private Laws of 1915, purporting to ratify the acts of the municipal authorities in reference to the bond issue under the Private Laws of 1913, ch. 202. The statute of 1915 was evidently passed at the instance of the holders or proposed purchaser of the bonds, merely in order to cure apprehended defects of procedure, and thus make the bonds a more safe and desirable investment. No such defects, real or supposed, are set forth in the record, and in our minds this statute has no bearing on any question presented.
In the appeal of defendants the question is also raised and duly presented as to which of the defendants is primarily liable for these assessments in case liability is established. As heretofore stated, this depends on the proper construction of the lease of the Atlantic and North Carolina Railroad to the Howland Improvement Company, and under which the Norfolk Southern controls, and is now operating the lessor's road. We do not find the exact date of duration of this least in (22) the record, except that it is a lease of extended duration. Being a matter of very great interest, however, and affecting an important piece of State property, and having been fully presented to the Court in several suits where questions concerning it were involved, we feel justified in giving the date and duration, as stated, for 91 years and 4 *Page 24 
months from 1 September, 1904. See copy in R. R. v. R. R., 147 N.C. 372. The clause of this lease more directly pertinent is in terms as follows: "And the said lessee does further covenant to and with the said lessor that it shall pay, in addition to the rental reserved as aforesaid, and as a part of the rent to be paid for the property herein described, all taxes imposed upon the said leased property or upon the franchise of the said Atlantic and North Carolina Railroad, or its income whether by the State of North Carolina or any county, city, town, or township thereof, or by the United States, all such taxes shall be paid by the lessee so as to entirely relieve the lessor from payment of taxes of any nature whatever during the continuance of this lease, upon the property leased or upon the franchises of the lessor, or its income from the leased property," etc. It is not claimed or contended that the clause in question is not binding on the Norfolk Southern Railroad, and we are of opinion that by correct interpretation, it constitutes the Norfolk Southern Railroad the assignee of the Howland Improvement Company, the primary debtor in reference to plaintiff's claim.
While local assessments of this kind are not regarded as a tax in the sense of a general revenue measure, we have several times held that the right to enforce them is referred to the power of taxation possessed and exercised by government. They have been frequently denominated and held to be a special tax, in transactions of the kind presented here, and in this connection the length of the lease extending past the ordinary life of the improvement, in its benefit or burdens, has been allowed great weight.Chicago R. R. v. Kansas City, 75 Kan. 167; Cemetery Co. v. Phila.,93 Pa. 129;Erie v. Church, 105 Pa. 278; Gibbs v. Bank, 198 Ill. 307; Curtis v.Pierce, 115 Mass. 186; Harvard College v. Boston, 104 Mass. 470-483. From the purpose and duration of the lease, from the broad and inclusive nature and meaning of the language used, a covenant protecting the lessor "from payment of taxes of any nature whatever," and from the better considered decisions on the subject, we are clearly of opinion that while the claim has been properly adjudged against both defendants, the primary liability between the two is on the lessee, the Norfolk Southern Railroad.
On defendants' appeal we find no error, and the judgment is
Affirmed.
PLAINTIFF'S APPEAL.
(23) Plaintiff excepted and appealed from the refusal of his Honor to give judgment of foreclosure and sale as against the defendant railroads to the extent that the same would interfere with the *Page 25 
operation of the road and the discharge of their duties as common carriers.
It is very generally held that the Legislature may make these assessments a paramount lien on the franchise and property of a railroad, and in order to such an effect, it is not necessary for a statute to give such lien in express terms if by correct interpretation it intends that such a lien shall be conferred. And it has been held that in creating a lien for these assessments for local improvements against abutting property, the statute necessarily intends it shall be the superior claim, for otherwise such property could be effectually or very largely withdrawn from bearing its proportionate share of burdens required by the public weal. Speaking to the question of Drainage Comrs. v. Farm Asso.,165 N.C. 697-702, a case substantially similar in principle, Chief JusticeClark said: "An analogous instance is the assessment of abutting proprietors for street improvements or upon landowners for building a county or township fence, all of which take priority over the holder of a mortgage, because the mortgagor can convey no exemption from public burdens which he does not himself possess." See, further, Baldwinv. Meroney, 173 Ind. 574, reported also in 30 L.R.A. (N.S.), at page 761, with a full and learned editorial note on the subject;Dressman v. Farmers Bank, 100 Ky. 571; Seattle v. Hill, 14 Wn. 487; 25 R. C. L. See page 188, title Special and Local Assessments, secs. 100 and 101. In the present case the private statute applicable to a portion of these claims, ch. 202, Private Laws 1913, and incorporating part of ch. 338, Private Laws 1905, gives the right to enforce the lien against the "property." And in the public statute, C. S., ch. 56, made as a complete act in itself and in addition to any local legislation appertaining to the subject, a lien is given in express terms against abutting railroad property and its franchise. In section 2713 of the act it is made "from the time of the assessment and confirmation thereof, a lien superior to any and all liens and encumbrances," and this by correct interpretation does not refer to subsequent liens, but the reference to the date of confirmation is only to fix the time when such lien is conclusively established and when so established it takes precedence over all liens existent or otherwise. And further, in section 2717, the law provides, if the "lien is not paid when due, it shall be subject to the penalties now provided as in case of unpaid taxes." Thus showing a clear purpose of the Legislature to make the lien effective and superior to any and all other liens or encumbrances. It would be an idle thing to confer such a lien and then withdraw any and all means for its effective enforcement, (24) and in our opinion the lien in question here, when properly established, amounts to a statutory mortgage, having preference, as *Page 26 
stated, over any and all liens and encumbrances existent or otherwise, and to be enforced by decree of sale of the property and franchise, as in other cases provided, C. S. 3462-3463; James v. R. R., 121 N.C. 523, and modified as to cases concerning property under Federal jurisdiction in Julian v. Trust Co., 193 U.S. 93; Pipe Co. v. Howland, 111 N.C. 615;Gooch v. McGee, 83 N.C. 60.
There is error, and this will be certified that a proper judgment of foreclosure and sale be entered.
Error.
Cited: Berry v. Durham, 186 N.C. 425; Gunter v. Sanford, 186 N.C. 457;Bank v. Watson, 187 N.C. 111; Blair v. Comrs., 187 N.C. 490; Road Comm. v.Comrs., 188 N.C. 365; Hahn v. Fletcher, 189 N.C. 731; Farrow v. Ins. Co.,192 N.C. 150; Coble v. Dick, 194 N.C. 733; In re Assessment againstRailroad, 196 N.C. 761; Saluda v. Polk County, 207 N.C. 183; Raleigh v.Bank, 223 N.C. 293; Goldsboro v. R. R., 241 N.C. 225; Roberts v. BottlingCo., 257 N.C. 658.